# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| BLANTON SIMS, | ) |
|     Plaintiff, | ) |
| | ) No. 12 C 677 |
| v. | ) |
| | ) |
| DR. SCHAEFER, I. CARTER, WEXFORD HEALTH SOURCES, INC., and MARCUS HARDY, | ) Judge John Z. Lee |
|     Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Blanton Sims brings this civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Ronald Schaefer, M.D., Imhotep Carter, M.D., and Wexford Health Sources, Inc. ("Wexford") (collectively, "Defendants"), alleging deliberate indifference to his medical needs while he was incarcerated at Stateville Correctional Center. Sims alleges Dr. Schaefer acted with deliberate indifference when he changed Sims's cholesterol medication and then refused to treat an eye infection. Sims also contends Dr. Carter and Wexford acted with deliberate indifference by ignoring his complaints about Dr. Schaefer. Defendants now move for summary judgment on all counts. For the following reasons, the Court grants in part and denies in part Defendants' motion.

## Factual Background[1]

Blanton Sims, an inmate at Stateville Correctional Center, has high cholesterol. Defs.' LR 56.1(a)(3) Stmt. ¶¶ 3, 40. Sims also has peripheral arterial disease, and controlling his cholesterol levels is "very important." Pl.'s LR 56.1 (b)(3)(C) Stmt. ¶ 4.

---

[1]     The following facts are undisputed, unless otherwise noted.

On January 21, 2009, Sims was prescribed the cholesterol medication Zocor by Dr. Zhang, his physician at the time. *Id.* ¶ 6. This medication was discontinued on September 17, 2009, when Dr. Zhang started Sims on Lipitor, another cholesterol medication. *Id.* ¶ 7. Dr. Schaefer, a staff physician at Stateville, renewed the Lipitor prescription on September 18, 2010, and again on February 16, 2011. *Id.* ¶ 9; Defs.' LR 56.1(a)(3) Stmt. ¶ 28.

On or about March 30, 2011, Sims submitted a Lipitor refill tab to a nurse. Pl.'s LR 56.1 (b)(3)(C) Stmt. ¶ 10. Instead of refilling the prescription, Dr. Schaefer put Sims back on Zocor. Defs.' LR 56.1(a)(3) Stmt. ¶ 46. Dr. Schaefer does not remember whether he reviewed Sims's medical history before changing the prescription. Pl.'s LR 56.1 (b)(3)(C) Stmt. ¶ 13. According to Sims, the decision was arbitrary in that "Dr. Schaefer [did] not know why he discontinued [his] Lipitor prescription." *Id.* ¶¶ 11, 19. According to Dr. Schaefer, the change was made because Lipitor was no longer listed on the Stateville formulary. *See* Defs.' LR 56.1(a)(3) Stmt. ¶ 19; Defs.' Reply Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 11. The formulary identifies preferred drugs "used to treat particular conditions," although it does not prevent a physician from requesting a different drug from Wexford, should the physician believe "that a non-formulary drug should be prescribed." Defs.' LR 56.1(a)(3) Stmt. ¶¶ 18–20.

Sims filed a grievance about the change in his medication on April 11, 2011, complaining that Dr. Schaefer prescribed Zocor instead of Lipitor "without discussing it with [him]." Pl.'s LR 56.1 (b)(3)(C) Stmt. ¶ 19. Defendants claim that, on April 29, 2011, Stateville's grievance officer responded to the grievance and included a note from Dr. Schaefer explaining that Zocor would be adequate for Sims's medical needs. Defs.' LR 56.1(a)(3) Stmt. ¶ 8. Sims asserts he appealed this grievance internally; Defendants contend he did not. Pl.'s LR (b)(3)(C) Stmt. ¶ 20.

In any event, Sims opted to not take Zocor following the change in prescription, a decision he discussed with Dr. Carter, who at the time was Stateville's On-Site Medical Director, during an evaluation on August 4, 2011. *See* Defs.' LR 56.1(a)(3) Stmt. ¶¶ 48–49, Ex. 4, Carter Dep,. at 11:19–23. Eventually, however, Sims continued taking Zocor again in lieu of Lipitor, although the parties dispute the exact date that occurred. *See* Pl.'s LR 56.1 (b)(3)(C) Stmt. ¶ 21.

The parties also dispute the relative effectiveness of the two drugs.[2] *See id.* ¶ 22. Zocor and Lipitor both belong to a class of medications referred to as "statins"; Zocor is known generically as "simvastatin," while Lipitor is known generically as "atorvastatin." Defs.' LR 56.1(a)(3) Stmt. ¶ 21. According to Defendants, the drugs "are equally effective in treating [high cholesterol]." *Id.* ¶ 22.

On October 12, 2011, Sims visited Dr. Schaefer for a physical examination. Pl.'s LR 56.1 (b)(3)(C) Stmt. ¶ 30. The parties disagree as to what exactly happened during the examination. Sims claims he told Dr. Schaefer "the eye infection he had been catching had started to come back, and [he] was experiencing symptoms like itching, burning, discoloration, and puss[sic]/mucus in his eyes." *Id.* ¶ 32. According to Dr. Schaefer, however, Sims showed no visible signs of an eye infection. Defs.' Reply Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 32. Nevertheless, they agree that Sims asked for a refill of his eye drop prescription which had run

---

[2] In multiple instances, Sims offers as an undisputed "fact" medical opinions and cites to medical records, pamphlets, or his own deposition testimony as support. *See* Pl.'s LR 56.1 (b)(3)(C) Stmt. ¶¶ 3–6, 8, 22. For example, in explaining the relative effect certain drugs had on his cholesterol levels, Sims cites only to the records themselves and to his deposition testimony. *See id.* ¶ 22. This is improper. While Sims may testify as to his own personal experiences (pain, symptoms, etc.), he is not an expert and therefore may not provide a medical opinion. *See*, *e.g.*, *Newell v. Ngu*, 589 F. App'x 782, 786 (7th Cir. 2014) (explaining that a plaintiff cannot give an opinion on the cause of his medical condition, but may testify that he suffered from a recurring infection and "experienced pain and discomfort during the [period in question].")."[S]ummary judgment may only be defeated by pointing to *admissible* evidence in the summary judgment record that creates a genuine issue of material fact." *United States v. 5443 Suffield Terrace*, 607 F.3d 504, 510 (7th Cir. 2010) (emphasis added). And because any medical opinion testimony from Sims would be inadmissible at trial, the Court strikes those statements of fact that necessarily rely upon it.

out. *Id.* ¶ 33. Sims claims Dr. Schaefer would not refill the prescription "because Sims was not there to have any prescription refilled." Pl.'s LR (b)(3)(C) Stmt. ¶ 33. Further, Sims asserts Dr. Schaefer said he would not examine Sims's eyes because of the recent grievance Sims submitted about changing his Lipitor prescription to Zocor. *Id.* ¶ 34. Dr. Schaefer claims that Sims was taking prescription eye drops — specifically, an antihistamine called Patanol — to merely control itching caused by common allergies, *see* Defs.' LR 56.1(a)(3) Stmt. ¶¶ 52–54, and denies that he "would not [have] refill[ed] [Sims's] prescription if he discovered a condition . . . that required treatment." Defs.' Reply Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 33.

Sims filed an emergency grievance that same day regarding the physical examination with Dr. Schaefer. Pl.'s LR (b)(3)(C) Stmt. ¶ 36. Sims also sent that grievance to the Administrative Review Board. *Id.* ¶ 37. The Board required a Grievance Officer's response, which Sims never received. *Id.*

Sims also wrote letters complaining of the same to Dr. Carter and Wexford. Pl.'s LR 56.1 (b)(3)(C) Stmt. ¶¶ 38–39. Neither Dr. Carter nor Wexford admit to receiving these letters, on account of prison procedures for screening inmate's mailings. *See* Defs.' Reply Pl.'s LR 56.1(b)(3)(C) Stmt. ¶¶ 38–39. Dr. Carter admitted, however, that pus exuding from one's eye could evidence a "serious medical complaint" and that, if true, Dr. Schaefer's actions "would more than likely be inappropriate." *See* Pl.'s LR 56.1(b)(3)(B) Stmt. ¶ 38, Ex. 4, Carter Dep., at 59:3–4, 19–24. Sims was eventually prescribed eye drops on December 8, 2011, and an order for those drops was placed on December 20, 2011. *See id.* ¶ 40.

## **Legal Standard**

Summary judgment is appropriate if the evidence demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of

4

law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  If no reasonable jury could find in favor of the nonmoving party, then no genuine dispute exists.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Once the movant has demonstrated that there is no genuine issue of material fact, the nonmovant bears the burden of setting forth specific facts demonstrating that there are disputed material facts that must be decided at trial.  *Celotex*, 477 U.S. at 322.  In setting forth such specific facts, the nonmovant is required to "go beyond the pleadings" and support his contentions with documentary evidence.  *Id.* at 324.  The inquiry is essentially "whether the evidence presents a sufficient disagreement to require submission to the jury, or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson*, 477 U.S. at 251–52.

## Analysis

### I. Exhaustion of Administrative Remedies

As an initial matter, Defendants assert that Sims has failed to exhaust his administrative remedies as to the grievances filed April 11, 2011, and October 12, 2011, and that any related claims are consequently barred.  Under the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  "To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require."  *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002).

In this instance, the prison rules required Sims to appeal any unsatisfactory response to his grievance "in writing to the [Director of the Department of Corrections] within 30 days after the date of the decision," who then determines if the matter "requires a hearing before the

5

Administrative Review Board." 20 Ill. Admin. Code §§ 504.802, 504.850(a)–(b); *see also Roberts v. Neal*, 745 F.3d 232, 235 (7th Cir. 2014) ("If the officer denies the grievance, and the warden affirms that denial, the prisoner can appeal to the Administrative Review Board, an entity within the Illinois Department of Corrections having statewide jurisdiction.") (internal citations omitted).

With regard to the grievance submitted April 11, 2011, Defendants claim Sims did not appeal the grievance officer's response finding that his medical needs were being adequately cared for. *See* Defs.' LR 56.1(a)(3) Stmt. ¶ 9, Ex. 13 at 1. Defendants refer to the response form dated June 7, 2011, in which the box "Committed Person's Appeal to the Director" is left blank. *Id.* Indeed, if Sims did not sign this part of the form or forward it to the address contained therein within thirty days, he would have failed to exhaust his administrative remedies. *See*, *e.g.*, *Boyce*, No. 13 C 5746, 2015 WL 5462137, at *14 (Where plaintiff did "not present[] competent evidence that he appealed his grievances and emergency grievances to the ARB," plaintiff failed to exhaust administrative remedies.). Sims, however, provides a signed and dated version of that same document, indicating that he did appeal the decision to the Director. Pl.'s Resp. Defs.' LR 56.1(a)(3) Stmt. ¶ 9, Ex. C. Defendants believe the signature to have been added after the fact. Defs.' Reply Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 20. At any rate, all of this goes to show that there is a genuine factual dispute as to whether Sims properly appealed the April 11, 2011 grievance. It would thus be inappropriate to grant summary judgment in favor of defendants on the basis of exhaustion as to these claims.

With regard to the emergency grievance submitted October 12, 2011, Defendants claim that Sims "neither re-filed his grievances nor appealed the denial of his grievance to the ARB." Defs.' Mem. 4. Defendant cite to no evidence, affidavit, or deposition testimony to support this

contention in their Local Rule 56.1 statement. *See* Defs.' LR 56.1(a)(3) Stmt. ¶ 12. Furthermore, Defendants undermine this assertion in their reply to Sims's statement of additional facts, where they admit he forwarded the grievance to the Administrative Review Board. *See* Defs.' Reply Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 37. "Failure to exhaust is an affirmative defense that a defendant has the burden of proving." *King v. McCarty*, 781 F.3d 889, 893 (7th Cir. 2015). And, suffice it to say, Defendants have not met that burden here to warrant summary judgment.

## II. Deliberate Indifference as to Dr. Schaefer and Dr. Carter

Defendants additionally contend there is no genuine issue of material fact from which a jury could find Dr. Schaefer and Dr. Carter were deliberately indifferent to Sims's medical needs. Defs.' Mem. 5–13. "The Eighth Amendment to the Constitution of the United States proscribes the infliction of 'cruel and unusual punishments,'" and thereby "imposes upon prison officials the duty to 'provide humane conditions of confinement'" to the incarcerated. *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996). A prisoner raising such a claim must prove: (1) a deprivation — in this case, the denial of a medical need — that is "objectively, sufficiently serious"; and (2) that the defendant demonstrated a "sufficiently culpable state of mind" by deliberately ignoring the plaintiff's alleged need or risk. *Id.*

Defendants' arguments focus on the latter, "subjective" inquiry, which is an exacting standard to meet. The Supreme Court in defining "deliberate indifference" adopted the "subjective recklessness" definition from criminal law. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). According to that definition, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* "Neither negligence nor even gross negligence is a sufficient basis for liability;

7

rather, liability attaches only if the conduct is intentional or criminally reckless." *Chapman v. Keltner*, 241 F.3d 842, 845 (7th Cir. 2001).

### A. Dr. Schaefer's Change of Prescription from Lipitor to Zocor

Defendants begin by challenging whether Sims has provided sufficient evidence from which a jury could conclude Dr. Schaefer acted with deliberate indifference when he changed Sims's prescription from Lipitor to Zocor. Sims's claim for deliberate indifference in this regard rests almost entirely on two facts: (1) Dr. Schaefer did not give him a reason for the change in medication — or at least, a reason that satisfied Sims; and (2) Dr. Schaefer's deposition testimony where he admits he does not recall whether he reviewed Sims's medical history. *See* Pl.'s Resp. 9. According to Sims, had Dr. Schaefer reviewed Sims's medical history, he would have seen that Zocor was less effective and that changing his prescription from Lipitor to Zocor posed a substantial risk to Sims, a patient with peripheral arterial disease. *See id.* This argument fails for a number of reasons.

First, the argument is predicated on the assumption that Zocor is, in fact, less effective than Lipitor. As noted above, Sims is not an expert qualified to make such a judgment and he has provided no other evidentiary basis from which a jury could reasonably conclude that the contention is true. Perhaps more to the point, even assuming Zocor is less effective than Lipitor, these facts at best still only permit the inference that Dr. Schaefer was negligent by failing to review Sims's medical records. And medical negligence does not suffice in proving deliberate indifference. *Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010).

It is apparent from the record and Sims's response brief that his dispute with Dr. Schaefer over the change in his prescription boils down to a disagreement with Dr. Schaefer's medical

judgment. This is insufficient to prove deliberate indifference. *Berry*, 604 F.3d at 441. Accordingly, the Court grants summary judgment in favor of Defendants on these claims.

### B. Dr. Schaefer's Refusal to Prescribe Eye Drops

Defendants also contend Sims has failed to produce "evidence showing that Dr. Schaeffer violated any standard of medical judgment by deciding not to renew Plaintiff's Patanol prescription, or that he was even aware of Plaintiff's alleged eye condition." Defs.' Mem. 8. This is untrue. Specifically, Sims testified that he was exhibiting symptoms such as discoloration of the eyes and a pus- or mucus-like discharge and that he revealed this to Dr. Schaefer. Pl.'s LR 56.1 (b)(3)(C) Stmt. ¶ 32. More importantly, however, Sims claims that Dr. Schaefer admitted at the time that he would not examine his eyes or prescribe any medication out of retaliation for Sims having previously filed a grievance against him. *Id.* ¶ 34. Sims can testify as to what happened between him and Dr. Schaefer during the October 12, 2011 physical, and, if believed, a jury could reasonably conclude Dr. Schaefer intentionally denied Sims medical care related to a serious medical condition. It is not for the Court to decide who is being truthful on summary judgment; that is the job of the trier of fact. The Court thus denies Defendants' motion as to these claims.

### C. Dr. Carter's Actions Regarding The Denial of Eye Drops

Defendants argue that summary judgment is appropriate as to Dr. Carter because Sims has failed to sufficiently establish Dr. Carter's personal involvement in the denial of prescription eye drops. Defs.' Reply 22–23. According to Defendants, even assuming Dr. Carter did in fact receive the letters, they are still insufficient to save Sims's claims against Dr. Carter because only those persons "who cause or participate in the violations" can be liable in a claim for

deliberate indifference. *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007). But ignoring an inmate's letters can, in some circumstances, form the basis of a deliberate indifference claim.

In the Seventh Circuit, "an inmate's letters to prison administrators may establish a basis for § 1983 liability." *Vance*, 97 F.3d at 993. This is because, once an official knows of a substantial risk to the inmate, "the refusal or declination to exercise the authority of his or her office may reflect deliberate disregard." *Id.* Here, Defendants admit that Sims wrote two letters to Dr. Carter. Those letters are quite specific in that they describe the date of his incident with Dr. Schaefer, the basis of Dr. Schaefer's refusal to treat his eye condition, and the nature of his symptoms. Even Dr. Carter admitted in his deposition that the symptoms described in the letters could evidence a "serious medical complaint" and that, if true, Dr. Schaefer's actions "would more than likely be inappropriate." *See* Pl.'s LR 56.1(b)(3)(B) Stmt. ¶ 38, Ex. 4 at 59:3–4, 19–24. Accordingly, a jury could reasonably conclude that if Dr. Carter actually received the letters — which is disputed — he acted with deliberate indifference by ignoring his medical needs. The Court thus denies summary judgment as to Sims's claims against Dr. Carter.

### D. Effect of Delay in Treatment

Defendants further claim that Sims, to survive summary judgment, must "produce verifying medical evidence that he suffered an additional injury connected with . . . the alleged delay in prescribing Patanol." Defs.' Mem. 13; *see Langston v. Peters*, 100 F.3d 1235, 1240 (7th Cir. 1996) ("An inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed.") (quoting *Beyerbach v. Sears*, 49 F.3d 1324, 1326 (8th Cir. 1995)). It is true that Defendant has not provided expert testimony that would establish the delay in treatment's detrimental effect. *See supra* n.2. However, viewing the record in a light

10

most favorable to Sims, the Court does not find this fatal to his claims. Unlike the cases cited by Defendants, the delay is not merely a matter of hours, but a matter of months. *See Langston*, 100 F.3d at 1241 ("Apart from the rape, there is no evidence that as a consequence of the assault [plaintiff] suffered from a serious injury which required immediate treatment," and therefore, absent some medical evidence to the contrary, the prison official's one-hour delay in obtaining medical treatment did not amount to constitutional deprivation.). But more importantly, Sims can at least prove on the record before the Court that he suffered from pain during the months in question and that his symptoms and condition worsened. From this, a reasonable jury could conclude that "the delay unnecessarily prolonged and exacerbated [that] pain." *Williams v. Liefer*, 491 F.3d 710, 716 (7th Cir. 2007). Accordingly, the Court denies Defendants' motion in this regard.

### III. *Monell* Claims Against Wexford

Defendants lastly claim that summary judgment is appropriate as to Wexford because Sims has failed to set forth facts sufficient to prove a pattern or policy under *Monell*. Private corporations acting under color of state law — such as Wexford — may be held liable for injuries resulting from unconstitutional policies or practices. *Monell v. Dep't of Social Servs. of City of N.Y.*, 436 U.S. 658, 690–91(1978); *Estate of Novack ex rel. Turbin v. Cnty. of Wood*, 226 F.3d 525, 530 (7th Cir. 2000). To recover, a plaintiff must demonstrate the alleged injury was caused by an official policy or widespread practice; *respondeat superior* is not a recognized theory in deliberate indifference actions. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 479–80 (1986). This can be established by proof of "(1) an express municipal policy; (2) a widespread, though unwritten, custom or practice; or (3) a decision by a municipal agent with

'final policymaking authority.'" *Milestone v. City of Monroe, Wis.*, 665 F.3d 774, 780 (7th Cir. 2011).

Sims argues he has set forth enough facts from which a reasonable jury could infer he was harmed by a widespread, unwritten practice. Sims relies on language from this Circuit that municipal liability may be demonstrated "'by showing a series of bad acts and inviting the court to infer from them that the policymaking level of government was bound to have noticed what was going on and by failing to do anything must have encouraged or at least condoned, thus in either event adopting, the misconduct of subordinate officers.'" *Estate of Novack*, 226 F.3d at 531 (quoting *Jackson v. Marion Cnty.*, 66 F.3d 151, 152 (7th Cir. 1995)). Here, Sims filed multiple grievances and wrote four letters to Wexford and Dr. Carter, but his medical needs still went unaddressed for months. Construing all facts in Sims's favor, the Court finds that a reasonable jury could conclude Wexford "at least condoned" the ignoring of inmates' medical requests. *See*, *e.g.*, *Gallo v. Ghosh*, No. 08 C 6974, 2013 WL 5587081, at *4 (N.D. Ill. Oct. 10, 2013) ("[T]here remains a genuine dispute as to whether Wexford participated in any constitutional violation by condoning an unofficial policy of ignoring sick box requests or by failing to correct misconduct that it was bound to have known about."). Defendants' motion is therefore denied as to Wexford.

## Conclusion

For these reasons, the Court grants in part and denies in part Defendants' motion for summary judgment [129]. The Court grants summary judgment in favor of Dr. Schaefer on Plaintiff's claims related to the change in Plaintiff's cholesterol medication. The Court denies the motion in all other aspects.

SO ORDERED                ENTER: 9/25/15

_____
**JOHN Z. LEE**
**United States District Judge**